[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried to the court, involves a dispute between an employer, the plaintiff, Mafcote Industries, Inc., and its former employee, the defendant, Randall L. Swanson. In its amended complaint, the plaintiff alleges in the first count that the defendant breached the employment agreement between the parties by threatening to disclose confidential information. In the second count, the plaintiff alleges a conversion. In the third count of the complaint, the plaintiff contends that the defendant committed a theft in violation of General Statutes § 52-564, which authorizes an award of treble damages. A fourth count concerning arbitration was subsequently withdrawn.
The defendant denied the material allegations of the complaint, and filed a number of special defenses, including breach of contract, breach of the implied covenant of good faith and fair dealing, self-help, failure of consideration and a contract of adhesion. The defendant also filed a counterclaim alleging breach of contract and negligent infliction of emotional distress.
The court makes the following findings of fact. The plaintiff is engaged in the business of converting paper to such products as paper lace doilies, paper placemats and posterboards. The defendant was hired by the plaintiff pursuant to a written employment agreement effective January 6, 1992. The defendant became the mid-west regional sales manager for one of the CT Page 12485 plaintiff's divisions, the Royal Lace Division, and worked out of his home in Oshkosh, Wisconsin. After working for approximately three and a half years, the defendants employment was terminated by the plaintiff in a letter dated November 10, 1995, in accordance with the employment agreement, which permits termination upon proper notice.
As part of his employment, the defendant was given a new 1992 Ford Taurus, paid for by and registered in the plaintiff's name. After the defendant's employment was terminated, the plaintiff asked him on a number of occasions to return the car. The defendant refused to do so, believing that the car was a bargaining chip he could use to insure receipt of everything the plaintiff owed by way of severance pay. However, even after the money due him for a bonus,[1] accrued vacation, a 401K Plan, business expenses and salary through December 31, 1995, was received, the defendant continued to refuse to return the car and still had it at the time of trial.. An appraiser for the plaintiff testified reasonably and plausibly that the retail or market value of the Taurus in December, 1995, the time of the conversion, was $9,425. In addition, the plaintiff spent $2,491 to insure the vehicle from the termination of employment to the date of this judgment.
On December 29, 1995, the plaintiff sent a fax transmission to the defendant indicating that the plaintiff intended to have the Taurus picked at the defendants home on December 31, 1995, at noon. The fax did not go out properly, through either the carelessness of the plaintiff's employee or malfunction of the machine. The plaintiff's transport agent appeared on December 31, 1995, when the defendant was not home, and attempted unsuccessfully to obtain the keys to the Taurus from the defendant's young son who was in the house at the time.
The court reaches the following conclusions. The plaintiff proved that despite a number of demands that the Taurus be returned, the defendant converted the vehicle to his own use. Conversion has been described as an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owners rights. Aetna Life Casualty Co. v. Union Trust Co., 230 Conn. 779, 790-91,646 A.2d 799 (1994), quoting D. Wright and J. Fitzgerald, Connecticut Law of Torts (2d Ed. 1968). See also Discount Leasing, Inc. v.Murphy, 33 Conn. App. 303, 309, 635 A.2d 843 (1993). CT Page 12486
The measure of damages for a conversion was discussed inWaterbury Petroleum Products, Inc. v. Canaan Oil Fuel Co.,193 Conn. 208, 222, 477 A.2d 989 (1984), which stated that in general the measure of damages is the value of the item converted at the time of the conversion. "Commonly in cases of conversion the loss is the value of the property. Commonly the value of the property as representing the owner's loss is its market value, if it has one, since thereby is indicated the cost of replacing."(Citation omitted.) Barker v. Lewis Storage Transfer Company,78 Conn. 198, 200, 61 A. 363 (1905). Although the defendant does not agree with this calculation of damages, but rather has introduced the concept of book value as an alternative, it was the defendant's refusal to return something that did not belong to him that precipitated the claim of conversion and the resulting calculation of damages as market value at the time of the conversion. The plaintiff's continued insuring of the Taurus was a reasonable business decision as the car was out of its control and, although evidently kept in a garage, it was in the possession of another who could operate the vehicle during the period in question.
The plaintiff did not prove by clear and convincing evidence that the defendant committed a theft of the Ford Taurus in violation of General Statutes § 52-564 because it failed to demonstrate a specific intent on the part of the defendant to misappropriate the vehicle, rather than a misguided attempt to gain leverage over the plaintiff. Alaimo v. Rover, 188 Conn. 36,39, 448 A.2d 207 (1982). The word "steal" in General Statutes § 52-564 is synonymous with "larceny" in General Statutes § 53a-119, which requires an "intent" to deprive another of his property. Lawson v. Whitey's Frame Shop, 42 Conn. App. 599,606, 682 A.2d 1016, rev'd on other grounds, 241 Conn. 678,697 A.2d 1137 (1997). In this case, the defendant was operating under a mistaken belief that he had some kind of lien or right to keep the vehicle until his monetary claims were satisfied.
The defendant failed to prove his special defenses and counterclaims. The plaintiff did not breach a contract. Negotiations occurred between the parties by telephone, faxes and letters, but the parties never had a meeting of the minds on how to settle their respective claims. For example, the defendant refers to a letter he sent to the plaintiff dated January 3, 1996, but that letter insists on charging the plaintiff for storage of the Taurus, which the plaintiff always refused. Subsequent correspondence on January 9 and January 10, 1996, did CT Page 12487 not produce a meeting of the minds as the plaintiff insisted that the Taurus be returned, and the defendant never actually did so. Moreover, the plaintiff insisted on the return of certain confidential business information that the defendant had obtained while working for the plaintiff, which did not occur until the time of trial. Hence the defendant has not proven a breach of contract.
The defendant has also failed to prove his claim of negligent infliction of emotional distress. The incomplete fax, the attempted pickup of the car by the plaintiff's agent when the defendant was not personally at home, and speaking directly with the defendants child, do not deserve any kudos, but the plaintiff's conduct does not constitute the negligent infliction of emotional distress. There was no showing that the plaintiff knew that its conduct created an unreasonable risk of causing emotional distress. Parsons v. United Technologies Corp.,243 Conn. 66, 88, 700 A.2d 655 (1997).
Although there was not any indication at the trial that the defendant was attempting to disclose or had disclosed trade secrets and confidential business information to anyone, the temporary injunction dated March 25, 1996, enjoining such disclosure, is hereby made into a permanent injunction.
Judgment may enter for the plaintiff to recover from the defendant the sum of $11,916.[2] Judgment may also enter for the plaintiff with respect to the defendant's counterclaims. Costs are to be taxed by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book (1998 Rev.) § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 2nd day of November, 1998.
William B. Lewis, Judge